IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 04 CR 630 |
| | ) | |
| v. | ) | Judge Ronald A. Guzmán |
| | ) | |
| EDEGARDO RIVERA, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

On November 4, 2004, Magistrate Judge Schenkier issued a Report and Recommendation ("R&R") recommending that the Court deny Edegardo Rivera's amended motion to suppress evidence. The case is before the Court on Rivera's objections to the R&R. For the reasons set forth below, the Court overrules the objections and adopts the R&R in its entirety.

### Facts

At the suppression hearing, Chicago Police Officer Christian Nunez testified as follows. On the morning of October 8, 2003, he received a message on his squad car computer ("PDT") to go to the Jiffy Lube in the 2900 block of North Cicero Avenue. (Suppression Hr'g Tr. at 9-10.) The message said that Sergio Serritella had information about a man with a gun in his car at that location. (*Id.* at 10.) The information sent over the PDT included a description of the car, its license plate number and a description of the man who allegedly had the gun. (*Id.* at 11.)

On four or five previous occasions, Nunez had investigated citizen complaints conveyed to him by Serritella, who is State Senator DeValle's legislative aide for public safety. (*Id.* at 10-11, 41.)

Based on his prior experiences with Serritella, Nunez knew that Serritella was a reliable source of information. (*Id.* at 11.)

Nunez arrived at the Jiffy Lube five to ten minutes after he received the message. (*Id.* at 12.) When he got there, Nunez spoke to Serritella, who pointed out the suspected vehicle and offender, as well as the man, later identified as Jose Sanchez, who was Seritella's informant. (*Id.* at 13.) Nunez saw that the person who provided the information to Serritella was wearing a Jiffy Lube uniform. (*Id.* at 14.) Nunez said that he did not ask Serritella about Sanchez but assumed Sanchez to be reliable based upon Nunez's past interactions with Serritella. (*Id.* at 38-39.)[1] After speaking with Serritella, Nunez returned to his squad car and called for back up. (*Id.* at 15-16.)

While Nunez waited in the squad car, defendant got into his car and started to drive away. (*Id.* at 16.) Nunez curbed defendant's car, had defendant get out, patted him down and locked him in the back seat of the squad car. (*Id.* at 17.)

Without asking for consent, Nunez searched defendant's car. (*Id.* at 17-18.) Nunez started by searching the back of the car because the information he received from the PDT said that the gun was in the rear compartment area. (*Id.* at 19.) Nunez found a loaded, nine-millimeter gun in the back of the car. (*Id.* at 18.)

After finding the gun, Nunez read defendants his *Miranda* rights. (*Id.* at 19.) According to Nunez, defendant responded, "I f\*\*\*ed up. I take the fall for the [gun]. Can you leave the car alone? It's my girlfriend's." (*Id.*)

---

[1] Serritella's testimony conflicted with Nunez's on this point, as Serritella testified that he told Nunez, before the search, that Sanchez was reliable. (*Id.* at 48.) Magistrate Judge Schenkier credited Nunez's testimony, a finding this Court has no reason to disturb.

2

After arresting defendant, Nunez staged a mock arrest of Sanchez, the informant, so defendant would not know Sanchez was involved. (*Id.* at 20.) Sanchez was placed in the rear of Nunez's squad car with defendant for two or three minutes, then he was put in a police wagon. (*Id.* at 20-21.) Defendant was taken to the 25th District station house for processing. (*Id.* at 21.) Sanchez was also taken to the station house, where he filled out a contact card and was released. (*Id.* at 23.)

Serritella also testified at the suppression hearing. He said that on October 8, 2003, he received a call from Sanchez, from whom he had previously received reliable information about criminal activity. (*Id.* at 42-44.) Serritella testified that Sanchez said he saw a gun in the back of defendant's car when he was servicing it. (*Id.* at 45-46.) Serritella then notified the police and went to the scene himself. (*Id.* at 47-48.) When he met Nunez at the scene, Serritella relayed to him the information from Sanchez. (*Id.* at 48.) Serritella told Nunez that Sanchez was concerned about his safety. (*Id.* at 49.) Serritella testified that he saw Nunez curb defendant's car, secure defendant in the rear of the police car, and find the gun in defendant's vehicle. (*Id.* at 51.) Serritella testified that he moved closer to the police car, heard Nunez read defendant his *Miranda* rights and heard defendant say, "I will take the fall for the [gun]. But can you leave my girlfriend's car alone?" (*Id.* at 52.)

Defendant argues that Nunez did not have probable cause for either the arrest or the search and asks that the gun and his statements to the police be suppressed.

3

## Discussion

We review the Magistrate Judge's probable cause determination *de novo*. 28 U.S.C. § 636(b); FED. R. CIV. P. 72(b). Nunez had probable cause to arrest defendant if "given the facts and circumstances within [his] knowledge at the time of arrest, [Nunez] reasonably believed that [defendant] had committed or was committing a crime." *United States v. Funches*, 327 F.3d 582, 586 (7th Cir. 2003). Likewise, Nunez had probable cause to search defendant's car "if, under the totality of the circumstances, it [was] fairly probable that the car contain[ed] contraband or evidence." *United States v. Webb*, 83 F.3d 913, 916 (7th Cir. 1996).

"Information from an informant can provide probable cause . . . if the information is reliable." *United States v. Rosario*, 234 F.3d 347, 350-51 (7th Cir. 2000). Information from an anonymous informant, however, provides probable cause only if it is corroborated by other evidence. *Florida v. J.L.*, 529 U.S. 266, 268 (2000).

Defendant says an uncorroborated tip from an anonymous informant was all Nunez had when he arrested defendant and searched his car. The Court disagrees. Nunez's trip to Jiffy Lube was prompted by information from two sources: Serritella and Sanchez. Nunez knew Serritella, had acted on tips from him before this incident and had found those tips to be reliable. Given his past interactions with Serritella and Serritella's position as a public security aide to a state legislator, Nunez had every reason to trust the information he provided.

Moreover, though Nunez did not know Sanchez before the incident, that does not make Sanchez an anonymous informant. Nunez did not know Sanchez's name, but he knew what Sanchez looked like, that he worked at Jiffy Lube and that he had identified himself by name to Serritella. In short, Nunez had enough information about Sanchez to hold him accountable if his information

4

turned out to be false. Nunez was not, therefore, a true anonymous tipster. *See id.* at 270 (distinguishing anonymous tips from those of known informants because the latter "can be held responsible if [their] allegations turn out to be fabricated").

Moreover, even if Sanchez were an anonymous informant, the record shows that Nunez had sufficient corroborative evidence to rely on his information. Sanchez provided detailed descriptions of defendant and his car that were borne out by Nunez's personal observations. Sanchez also gave specific information about the location of the gun and a credible explanation of how, in the course of his duties at Jiffy Lube, he had discovered it. Thus, even if Sanchez were an anonymous informant, his information was sufficiently corroborated to constitute probable cause.

## Conclusion

For the reasons set forth above, the Court overrules defendant's objections and adopts Magistrate Judge Schenkier's R&R in full. Defendant's motion to suppress is, therefore, denied.

**SO ORDERED.**                                 ENTERED:   12/22/05

HON. RONALD A. GUZMAN
United States District Judge

5